1  Greta Katz (CA Bar #249400)
2  Greta@gmpusa.com
   Chrystal Bobbitt (CA Bar #218544)
3  Chrystal@gmpusa.com
4  GLOBAL HORIZONS, INC.
   11111 Santa Monica Boulevard, Suite 1440
5  Los Angeles, CA 90025
6  Tel: (310)234-8475
   Fax: (310)234-0786
7

8                                    COPY

9  Attorneys for Plaintiffs

10

11                 UNITED STATES DISTRICT COURT
12                CENTRAL DISTRICT OF CALIFORNIA

13

14  GLOBAL HORIZONS, INC. and        )   CASE NO.
    MORDECHAI ORIAN,                 )   CV07-08428 GHK VBKx
15                                   )
16                                   )   COMPLAINT FOR
                         Plaintiffs, )   DECLARATORY RELIEF
17  vs.                              )
                                     )
18  U.S. DEPARTMENT OF LABOR, an     )
19  Agency of the United States of   )
    America; ELAINE L. CHAO,         )
20  Secretary of U.S. Department of  )
    Labor; MICHAEL CHERTOFF,         )
21  Secretary of Department of Homeland )
22  Security; EMILIO T. GONZALEZ,    )
    Director U.S. Citizenship and    )
23  Immigration Services; PAUL       )
24  NOVAK, Director Vermont Service  )
    Center of the U.S. Citizenship and )
25  Immigration Services,            )
                                     )
                         Defendants. )

                          - 1 -

## JURISDICTION

1.     This Court has jurisdiction over the present action pursuant to 28 U.S.C. § 2201 ("any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration"); 5 U.S.C. § 702 ("A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."); and 28 U.S.C. § 1331 ("district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States"). Costs and attorneys fees will be sought pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504, and 28 U.S.C. § 2412(d), *et seq.*  Relief is requested pursuant to these statutes.

## INTRODUCTION

2.     This is an action for declaratory relief brought against Defendants to determine the rights and obligations of Plaintiffs Global Horizons, Inc. ("Global") and Mordechai Orian ("Mr. Orian") (collectively, "Plaintiffs"), regarding Plaintiffs' ability to participate in the H-2A labor certification program ("H-2A

- 2 -

Program")[1] as consultants.  Through this action, Plaintiffs also seek to determine what actions Defendants can take against Plaintiffs pursuant to the July 27, 2006, Employment & Training Administration ("ETA") Debarment Notice.

3.      There is a current, substantial, and actual controversy between the parties.  Defendants' actions are presently having an immediate and substantial effect on Global's ability to operate its business and Mr. Orian's ability to earn a living.  The questions in this petition are legal issues fit for judicial resolution and are within the subject matter jurisdiction of this court, as they involve federal questions and federal legislation.  Plaintiffs thus are seeking relief.

## PARTIES

4.      Plaintiff Global is a legal person and was incorporated in the state of California on October 5, 1997.  Global's headquarters are located at 11111 Santa Monica Boulevard, Suite 1440, Los Angeles, CA 90025-3348.  Global's primary business until November 2006 was utilizing the H-2A Program as an employer to recruit, hire, and employ a temporary labor force in the agriculture industry, to service the temporary labor needs of clients across the country.  Global now wishes to transform its business into a consulting business for employers who utilize the H-2A Program.

---

[1] See generally 29 C.F.R. 655.

5.      Plaintiff Orian is an individual residing in the County of Los Angeles, California.  Mr. Orian seeks to use what he has learned through his experience with the H-2A Program to become a consultant to employers and help them navigate the H-2A Program procedures.

6.      Defendant United States Department of Labor ("DOL") is an executive agency of the Government of the United States of America.  The DOL is headquartered in Washington D.C. and maintains regional offices for its various departments and agencies throughout the United States.

7.      Defendant Elaine L. Chao ("Chao") is the Secretary of Labor.  This suit is brought against Chao in her official capacity because she is the head of the DOL and all of the offices and agencies of the DOL are under her direction and control, including the Office of Administrative Law Judges ("OALJ"), the Employment & Training Administration, and the Office of Foreign Labor Certification ("OFLC") within the ETA, 29 U.S.C. §557.

8.      Defendant Michael Chertoff ("Chertoff") is the Secretary of the Department of Homeland Security. This suit is brought against Chertoff in his official capacity because he is responsible for the administration and enforcement of all immigration and citizenship laws that are bound in the powers, duties, and functions of the Department of Homeland Security.

- 4 -

9.      Defendant Emilio T. Gonzalez ("Gonzalez") is the Director of the United States Citizenship and Immigration Services ("USCIS"). This suit is brought against Gonzalez in his official capacity because he is responsible for the oversight, administration, and execution of the immigration laws of the United States.

10.     Defendant Paul Novak ("Novak") is the Director of the Vermont Service Center of the USCIS ("Vermont Service Center"). This suit is brought against Novak in his official capacity because he directs the Service Center directly responsible for the prompt processing of all H-2A worker petitions.

## **VENUE**

11.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(e) & 1391(e)(3), which provides that a "civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which…the plaintiff resides if no real property is involved in the action." Plaintiff Global is a legal resident of the Central District of California and no real property is involved in this action.

## STATEMENT OF FACTS

12.     Global is a staffing company and a farm labor contractor and Mr. Orian is its President and Chief Strategic Officer.  Under the H-2A Program, Global has been in the business of providing local and foreign farm workers to clients nationwide, acting as the workers' employer.

13.     A person or entity in need of agricultural labor, who can also demonstrate to the satisfaction of the DOL that there are no able and willing local U.S. workers available to do the work, may get a certificate from the DOL (hereinafter, a "Certificate") certifying no such workers are available.  Such Certificate will then allow the person or entity to proceed with a process that may ultimately permit the importation of foreign laborers into the U.S. for temporary employment.  If the person or entity violates any material terms of the Certificate, the person or entity may be penalized.[2]

14.     Up until July 2006, Global was acting as an employer and contracting out its workforce to agricultural clients in need of temporary labor.  As the employer, Global was responsible for payroll, workers' compensation insurance, taxes and all duties and responsibilities of an employer.  As the employer, Global also was responsible for submitting the application for the

---

[2] See 20 C.F.R. § 655.110

Certificate, and for obtaining guest worker visas for the foreign workers who were employed when there was a shortage of domestic workers.  Global had obligations to its workforce that had to be met on a weekly basis, regardless of whether Global's clients met their obligations to Global.

15.    Global ran into difficulties at times while acting as an employer, largely because when the farmers failed to meet their obligations to Global, Global could not meets its obligations to its employees, which sparked investigations and ultimately lead to Global's temporary exclusion from the Program as an employer.

16.    On July 27, 2006, because the ETA determined that Global, as an employer, had allegedly violated certain material provisions of a previously issued Certificate, the ETA issued a Debarment Notice (attached hereto as <u>Exhibit A</u>) addressed to Plaintiffs, stating in pertinent part: "[P]ursuant to 20 C.F.R. §655.110(a), the [OFLC] has determined that any H-2A labor certification application filed by either [Global Manpower], also known as [Global Horizons] [sic] or [Mr. Orian] will be denied for the next three years."  The above quoted passage is the only language in the Debarment Notice describing the penalty assessed against Plaintiffs.

17.     According to 20 C.F.R. § 655.110, the penalty described in the Debarment Notice is the sole penalty permitted by the regulation, namely that as a result of violating a material term of a labor certificate, for a certain period of time "any [new] **application** subsequently submitted by the **employer** for that time period will not be accepted by the OFLC Administrator."[3] (emphasis added) Global was debarred for three (3) years, which meant that for three (3) years after the July 27, 2006 Debarment Notice, any application submitted by Global or Mr. Orian will be rejected.

18.     On August 11, 2006, Plaintiffs submitted a request for a *de novo* review of the Debarment Notice and on November 30, 2006, Administrative Law Judge William Dorsey issued a Decision & Order making the Debarment Notice the final order of the Secretary of Labor (attached hereto as Exhibit B).

19.     It should be noted that after November 30, 2006, Plaintiffs filed an appeal and an application for a TRO with the Central District of California. While the appeal is still pending before the District Court, the TRO application was denied.  Plaintiffs then appealed to the Ninth Circuit Court of Appeals.  On December 13, 2007, the Ninth Circuit issued its decision affirming the denial of the TRO application.

---

[3] 20 C.F.R. § 655.110(a).

20.     It is also imperative to stress that while the matters before the District Court and the Ninth Circuit pertain to Plaintiffs' ability to utilize the H-2A Program *as an employer,* the matter before this Court is whether Plaintiffs can operate *as consultants* to potential users of the H-2A Program, without the DOL's constant intervention and prevention.

21.     The so-called "debarment" essentially shut down Global's business entirely.  Global was allowed to complete its existing contracts, as the debarment is prospective only, but as soon as those were completed Global essentially shut down.  Global operates now on a very limited basis, defending and prosecuting litigation matters and trying to restore its business operations.

22.     The current overwhelming and grave shortage of labor in the agriculture industry is undisputable.  Employers who previously hired undocumented workers now avoid such practices because of the growing scrutiny and raids by the federal government.  Plaintiffs want to use their knowledge, experience, and skill to serve as a consultant to all those businesses that need assistance in navigating and using the very complicated and time consuming H-2A Program. (See Los Angeles Times Article 10/7/2007, attached hereto as Exhibit C).

23. Thus, Plaintiffs now wish to shift their business model from that of an H-2A employer to that of an H-2A Program consultant. Global was one of very few businesses in the country providing a niche service, and Mr. Orian is one of the most experienced and most knowledgeable persons in the country about the workings of this Program.

24. Under this new business model, which abides by the clear language of the Debarment Notice, Global would not file any H-2A labor certification applications on its own behalf and would not be the employer of any H-2A workers. Instead, Global would assist its clients in obtaining H-2A certification for them, acting only as an H-2A Program consultant to its clients.

25. This matter is brought before this Court because Global had already attempted to initiate this new business model, in February 2007, but was quickly shut down by the DOL. In or about February of 2007, McPeak Orchards ("McPeak") and Global entered into an agreement whereby Global would act as McPeak's H-2A *consultant*. Global proceeded to assist McPeak in filing the appropriate applications on McPeak's behalf to begin their H-2A labor certification process.

26. On March 5, 2007, the DOL issued to McPeak a letter (attached hereto as Exhibit D) indicating that McPeak's alien agricultural labor certification

- 10 -

application had been rejected. The reasoning for the rejection, according to this letter, was that "Global Horizons, Inc. is the employer of record rather than McPeak Orchards . . . Global Horizons, Inc. has been debarred from the H-2A program for the next three years."

27. The DOL intervened once again, in or about May of 2007, when the Karni Farm Family ("Karni") and Global entered into an agreement whereby Global would act as Karni's H-2A *consultant*. Global proceeded to assist Karni in filing the appropriate applications on Karni's behalf to begin their H-2A labor certification process.

28. On June 1, 2007, the DOL issued a letter to Karni (attached hereto as Exhibit E) indicating that Karni's alien agricultural labor certification application had been rejected. The reasoning for the rejection, according to the letter, was that "Global Horizons, Inc. was a former H-2A employer that was debarred from *participating in any way* with the H-2A program. Therefore, we are rejecting your application *due to the involvement of Global in the process as an agent* in your application and its involvement in the hiring and recruitment process." (Emphasis added.)

29. These actions taken by the DOL exceed the scope of the debarment, which only precludes Plaintiffs from filing new H-2A applications while acting as

an *employer*, but does not preclude Plaintiffs from acting as consultants.  The DOL's actions caused Global to lose business, not only with regards to the two contracts with McPeak and Karni, but probably with regards to other future contracts.  The DOL's actions also have prevented Plaintiffs from implementing their new business model; the DOL's anticipated interference looms large.  Thus, the DOL's conduct is currently causing Plaintiffs considerable hardship.  Plaintiffs therefore require the Court's intervention in this matter.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for judgment as follows:

    1.     That this Court renders a Declaratory Judgment declaring that the actions of Defendants in failing to fairly consider applications for H-2A labor certification filed by clients of Plaintiffs while acting as consultants is invalid and unconstitutional, under the Constitutions of the United States and the State of California, and under the statutory laws of the State of California;

    2.     That this Court declares that the actions of Defendants in failing to fairly consider applications for H-2A labor certification filed by clients of Plaintiffs while acting as consultants is ultra vires and unlawful according to the laws and regulations of the United States;

3.     That this Court retains jurisdiction of this matter for the purpose of enforcing the Court's Orders;

4.     That this Court award to Plaintiffs their costs and expenses of this action, including reasonable attorneys' fees, in accordance with 42 U.S.C. § 1988 and other applicable law;

5.     That this Court adjudges, decrees, and declares the rights and other legal relations of the parties to the subject matter here in controversy, in order that such declarations shall have the force and effect of final judgment; and

6.     That this Court grants such other and further relief as the Court deems equitable, just, and proper.

DATED this 28th day of December, 2007

Respectfully submitted,

GLOBAL HORIZONS, INC. and
MORDECHAI ORIAN,

by their attorneys,

Greta Katz (CA Bar #249400)
Chrystal Bobbitt (CA Bar #218544)
GLOBAL HORIZONS, INC.
11111 Santa Monica Boulevard, Suite 1440
Los Angeles, CA 90025
Tel: (310)234-8475
Fax: (310)234-0786

- 13 -

# Exhibit A

**U.S. Department of Labor**  Employment and Training Administration
200 Constitution Avenue, N.W.
Washington, D.C. 20210



JUL 27 2006

**CERTIFIED MAIL**

To:  Global Horizons Manpower, Inc.         CERTIFIED MAIL, RETURN RECEIPT
    Attn: Mordechai Orian                REQUESTED: Receipt #70001530000385797511
  11111 Santa Monica Blvd., Suite 1440
  Los Angeles, CA  90025

To:  Mordechai Orian                          CERTIFIED MAIL, RETURN RECEIPT
  c/o Global Horizons Manpower, Inc   REQUESTED: Receipt #70001530000385797528
  11111 Santa Monica Blvd., Suite 1440
  Los Angeles, CA  90025

Subject:   Department of Labor's Determination and Notice of Prospective Denial of
Temporary Alien Agricultural Labor Certification for Three Years

Dear Employers:

An investigation of your operations relating to the employment of agricultural workers has disclosed multiple substantial violations in California for the H-2A labor certification application that covered the period from August 1, 2003, to April 30, 2004, under the Immigration and Nationality Act (INA) , as amended by the Immigration Reform and Control Act (IRCA) (8 U.S.C. §§ 1101 (a)(15)(H)(ii)(a), 1184(c) & 1186), and under the implementing regulations for these Acts.  As a result of this investigation and pursuant to 20 C.F.R. § 655.110(a), the Office of Foreign Labor Certification in the Employment and Training Administration (ETA) has determined that any H-2A labor certification application filed by either Global Horizons Manpower, Inc., also known as Global Horizons, Inc. (Global) or Mordechai Orian (Orian) will be denied for the next three years.  I have concluded that Global and/or Orian made fraudulent and/or willful misrepresentations with respect to their labor certification application and that these actions constitute a "substantial violation "as defined in 20 C.F.R. § 655.110(g)(1)(i)(E).  More specifically:

- Global and Orian knowingly provided false information regarding agricultural work to be performed in California under the labor certification application requested for the August 1, 2003, to April 30, 2004, time period.  This application sought certification for 200 workers, when neither the agricultural work nor the contractual relationship with Taft Vegetable Farms, which was the basis for the application, ever existed.

- Global and Orian also knowingly provided false information regarding the termination of the employment of U.S. workers.  They represented to governmental agencies that the employment of U.S. workers was terminated for poor performance, when, in fact, the workers were terminated for reasons other than for cause.

Exhibit A

This letter and action address only the violations based on fraud and/or misrepresentation. Should violations for this certification be found on other grounds, separate action may be taken at a later date.

This determination is addressed to each person or firm shown above as being an addressee of this Determination and Notice. This action is taken on a joint and several basis, which means that each addressee of this Determination and Notice is subject to a denial action. Any request for review of this Determination will act as a request for review only by the person or firm that submits that request, unless it is expressly stated otherwise in the request for review itself.

Each addressee has the right to request an expedited administrative review or a de novo hearing of this Determination before a United States Department of Labor Administrative Law Judge. If either of the addressees makes such a request, the request must be in writing and dated, must specify whether an administrative review or de novo hearing is requested, and must be served on the U.S. Department of Labor, Employment and Training Administration, Office of Foreign Labor Certification, Attention: Bill Carlson, 200 Constitution Avenue, N.W., Room C-4312, Washington, D.C. 20210, within seven calendar days of the date of this Determination and Notice.

Sincerely,

William L. Carlson, Ph.D.
Administrator
Office of Foreign Labor Certification

2

Exhibit A

# Exhibit B

**U.S. Department of Labor**    Office of Administrative Law Judges
50 Fremont Street – Suite 2100
San Francisco, CA 94105

(415) 744-6577
(415) 744-6569 (FAX)



Issue Date: 30 November 2006

Case No.: 2006-TLC-00013

*In the Matter of:*

GLOBAL HORIZONS, INC.,
GLOBAL HORIZONS MANPOWER, INC., and
MORDECHAI ORIAN, an individual,

RESPONDENTS.

*Appearances:*

       Barbara A. Matthews, Esquire
       Norman E. Garcia, Esquire
       Office of the Solicitor of Labor
       For the Administrator

       Mindy S. Novik, Esquire
       Dean A. Rocco, Esquire
       Jackson Lewis LLP
       For the Respondents

Before:       WILLIAM DORSEY
             Administrative Law Judge

**Decision and Order Dismissing Untimely Request for Hearing**

    The parties have filed opening and supplemental arguments on the motion the Administrator of the Department's Office of Foreign Labor Certification, Employment and Training Administration, filed to dismiss the Respondents' request for hearing as untimely.[1] The Respondents' opposition to the dismissal includes exhibits and declarations, so the analysis is not confined to the Administrative Record the Department prepared.[2] I find that: (1) the request for hearing was filed late, (2) the doctrine of equitable tolling sets the standard for determining whether to accept it, and (3) the Respondents fail to satisfy that standard. The request for hearing

---

    [1] The Order for Further Briefing entered on Oct. 4, 2006 asked the parties to broaden their research on the standard to be applied in deciding whether to accept a late filing.

    [2] The certified copy of the administrative record the Department served, as 20 C.F.R. § 655.112(a)(1) (2006) requires, includes 157 pages.

Exhibit B

is dismissed. Dismissal makes the Department's July 27, 2006 Determination and Notice of Prospective Denial of Temporary Alien Agricultural Labor Certification for Three Years (the Determination Notice) the Secretary of Labor's final order.

### A.  The Context: Congress Requires that H-2A Matters be Expedited

Agricultural workers have been admitted temporarily (*i.e.*, as nonimmigrants) to the United States for over 50 years. The H-2A visa program had its genesis in the Immigration and Nationality Act of 1952 (the Immigration Act). Subparagraph (H)(ii) of Section 101(a)(15) of the Immigration Act described an eligible foreign worker as:

> (H) an alien having a residence in a foreign country which he has no intention of abandoning . . . (ii) who is coming temporarily to the United States to perform temporary services or labor, if unemployed persons capable of performing such service or labor cannot be found in this country. 8 U.S.C.A. § 1101(a)(15)(H)(ii) .

A staff report prepared for the Committee on Education and Labor of the House of Representatives gave this summary of the objectives of the 1952 legislation:

> In creating the H-2 program, Congress attempted to address the problems that DOL had documented pertaining to wage depression and job displacement caused by foreign agricultural workers. An explicit intent of the law, therefore, was to reserve American jobs for American workers. Thus the H-2 program allowed the admission of nonimmigrant workers into the U.S. to perform temporary services only if willing, able and qualified U.S. workers could not be found. Further to offset the adverse impact of foreign labor on the domestic agricultural labor market, the regulations required H-2 agricultural employers to pay an enhanced wage rate, known as the "adverse effect wage rate." Staff of House Comm. on Education and Labor, 102d Cong., 1st Sess., Report on the Use of Temporary Foreign Workers in the Florida Sugar Cane Industry 3 (Comm. Print 1991)

The Immigration Reform and Control Act of 1986 amended the 1952 Immigration Act to create a new category of temporary agricultural worker (designated an "H-2A" worker), defined as:

> (H) an alien . . . (ii)(A) having a residence in a foreign country which he has no intention of abandoning who is coming temporarily to the United States to perform agricultural labor or services, as defined by the Secretary of Labor . . . of a temporary or seasonal nature... 8 U.S.C.A. § 1101(a)(H)(ii)(A)

The House staff report gave this reason for the new category:

> In response to complaints by the agriculture industry that the H-2 program was too burdensome and inflexible to meet its labor needs, Congress amended the program in 1986 to create separate agricultural and non-agricultural temporary foreign worker programs .... The new agricultural program is known as "H-2A," after the new subsection designation. The process of applying for temporary foreign workers has been greatly streamlined under the H-2A program. However, the amendment also has incorporated into the statute many of the protections for U.S. workers that previously had been established by regulation under the H-2 program. The H-2A statute continues to prohibit the admission of temporary foreign workers at wage rates or working conditions which will adversely affect similarly-employed United States workers. Report, *supra*, p.3, 4.

   Today foreign nationals may be granted visas to work temporarily in the United States when there are not enough workers in this country who are able, willing, qualified and available at the time and place needed to perform agricultural labor or services. 8 U.S.C.A. §§1101 (a)(15)(H)(ii)(a), 1184(a), (c) (West 2005); 20 C.F.R. § 655.90(b)(1) (2006). Employers who need the labor (or their agents, such as the Respondent Global Horizons, Inc.) petition for the H-2A visas that will admit these agricultural workers to the United States. 8 U.S.C.A. § 1184(b), (c)(1) (West 2005); 8 C.F.R. § 214.2(h)(1)(i) (2006). Statements in the application and all interactions with the Department must be truthful. 29 C.F.R. § 501.7 (2006).[3] The Secretary of Labor's regulations describe the process used to certify that qualified United States workers are unavailable for the jobs, and that the temporary employment of the foreign workers will not

---

[3] That H-2A program regulation emphasizes the candor requirement, stating:

   "Information, statements and data submitted in compliance with provisions of the [Immigration] Act or these regulations are subject to title 18, section 1001, of the U.S. Code, which provides:

   Section 1001. Statements or entries generally.

   Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both."

adversely affect the wages[4] and working conditions[5] of similarly employed workers in that part of the United States. 8 C.F.R. § 214.2(h)(5)(ii); 20 C.F.R. §§ 655.90(b)-(d); 655.103.

The Secretary of Labor enforces both the attestations an employer makes in a temporary agricultural labor certification application, and the regulations that implement the H-2A program. 29 C.F.R. §§ 501.1, 501.5, 501.16 and 501.17 (2006). If foreign workers are paid sub-standard wages or subjected to sub-standard conditions, the market for farm laborers or services would prefer less costly temporary foreign workers, to the detriment of Americans.[6] False or fraudulent assurances about the jobs, wages or working conditions, or the failure to abide by program regulations may result in (1) monetary penalties imposed by the Department's Employment Standards Administration, (2) debarment from filing other H-2A certification applications imposed by the Employment and Training Administration, and (3) proceedings for specific performance, injunctive or other equitable relief in U.S. District Court. 20 C.F.R. §§ 655.103; 655.110 (2006); 29 C.F.R. § 501.19, 29 C.F.R. § 501.16 (c) and (d) (2006). The authority for these various enforcement strategies is found in 20 C.F.R. § 655.90(b)(2)(2)(A) and 29 C.F.R. §§ 501.15 and 501.16. The Immigration Act forbids the Secretary of Labor to certify an employer's H-2A application when:

> The employer during the previous two-year period employed H-2A workers and the Secretary of Labor has determined, after notice and opportunity for a hearing, that the employer at any time during that period substantially violated a material term or condition of the labor certification with respect to the employment of domestic or non-immigrant workers. 8 U.S.C.A. § 1188(b)(2)(A) (West 2005).

Temporary labor certifications require exceptionally swift handling so that farmers can harvest crops or breed farm and range animals as growing and breeding seasons dictate. *See generally,* 20 C.F.R. § 655.101(c), 64 Fed. Reg. 34957, 34961-34962. The employer may file an H-2A certification application just 45 days before the workers are needed. 8 U.S.C.A. § 1188(c)(1) (West 2005). The Department must tell the employer about any deficiencies in the application within seven days, and offer to let the employer make a "prompt resubmission of a

---

[4] See 20 C.F.R. § 655.107 (2006) on the mandate to pay prevailing wages, and how those wages are computed.

[5] The employer must arrange to house the temporary foreign workers; protect them from the economic consequences of job injuries with workers' compensation insurance; furnish necessary tools, meals, and transportation; guarantee the number of paid work days at the prevailing wage rates; pay the workers at frequent intervals; and keep records to demonstrate compliance with these requirements. 20 C.F.R. §§ 655.102(b)(1) through (14).

[6] Two examples — insurance and labor disputes — illustrate how the Immigration Act inhibits employers from gaining an advantage through hiring temporary foreign agricultural workers. The employer must provide insurance benefits to H-2A workers, for any injury or disease that arises out of and in the course of the employment, that are no less generous than the benefits state law requires for similar workers. 8 U.S.C.A. § 1188(b)(3) (West 2005) and 20 C.F.R. § 655.102(b)(2) (2006). The employer also must attest that the jobs to be certified are not vacant because a former employee is on strike or is locked out in the course of a labor dispute. 8 U.S.C.A. § 1188(b)(1) (West 2005) & 20 C.F.R. § 655.103(a) (2006).

4

Exhibit B

modified application." 8 U.S.C.A. § 1188(c)(2)(A), (B) (West 2005). The modifications must come within five calendar days. 20 C.F.R. §§ 655.101(c)(2); 655.104(c)(2) (2006). The decision on the application (often denominated a Determination Notice) is due no fewer than 30 days before the employer says the workers are needed. 8 U.S.C.A. § 1188(c)(3) (West 2005).[7] When an application is rejected on its merits or because it is incomplete, the employer may request an expedited review of the denial. 8 U.S.C.A. § 1188(c) (West 2005). At the employer's request, an administrative law judge convenes a *de novo* hearing within five working days after the judge receives the case file, and the decision is due within 10 days after the hearing. 20 C.F.R. § 655.112(b)(1) (ii) & (iii) (2006). It becomes the "final decision of the Secretary, and no further review shall be given to the temporary alien agricultural labor certification application or the temporary alien agricultural labor certification determination by any DOL official." 20 C.F.R. § 655.112(b)(2). These accelerated time frames to advise an employer of any omissions, to permit a modification, to determine whether to grant the application, to offer review in an administrative hearing and to issue a final decision, implement the Congressional policy that the Secretary dispose of H-2A matters with dispatch.

### B.    The Hearing Request

The Respondents' business is to obtain foreign agricultural workers for American farms that need them. They may apply for H-2A temporary alien agricultural labor certifications in their own name (for Global Horizons Manpower, Inc.) or as agents for employers they represent. 8 C.F.R. § 214.2(h)(5)(i)(A) & 20 C.F.R. §655.201(a)(2). Well-versed in H-2A program requirements and regulations, they have requested review of the Department's determinations before administrative law judges in at least 18 cases since 2003.[8] Global's employees include an immigration attorney. *See,* the response to the Department's motion to dismiss at pg. 2, and the declaration of Arik Ben-Ezra.

The Respondents have experience with debarment notices too. The Department brought an earlier proceeding to debar these Respondents, that sought additional relief as well. *In re: Global Horizons Manpower, Inc. and Mordechai Orien,* Cases No. 2005-TLC-00006 and 2005-TAB-00001. The Department alleged they had committed several substantial violations of the

---

[7] The Secretary's regulations have not yet been updated, and continue to reflect an older 20-day requirement. 20 C.F.R. §§ 655.101(b)(1); 655.101(c)(2) (2006). Section 748 of Public Law 106-78, dated October 22, 1999, amended section 218(c)(3)(A) of the Immigration Act [8 U.S.C.§ 1188(c)(3)] by changing "20 days" to "30 days."

[8] *Global Horizons, Inc.,* 2006-TLC-14 (ALJ Sept. 19, 2006); *Global Horizons, Inc,* 2006-TLC-10 (ALJ Sept. 19, 2006); *Global Horizons, Inc. (Creekside Mushrooms, Ltd.),* 2006-TLC-6 (ALJ May 17, 2006); *Global Horizons, Inc.,* 2006-TLC-4 (ALJ Mar. 2, 2006); *Global Horizons, Inc.,* 2005-TLC-18 (ALJ Oct. 7, 2005); *Global Horizons, Inc.* 2005-TLC-14 (ALJ June 21, 2005); *Global Horizons, Inc.,* 2005-TLC-12 (ALJ May 25, 2005); *Global Horizons, Inc. (Valley Fruit Orchard and Green Acre Farm),* 2005-TLC-11 (ALJ June 8, 2005); *Global Horizons, Inc.,* 2005-TLC-10 (ALJ May 25, 2005); *Global Horizons, Inc. (Valley Fruit Orchards),* 2005-TLC-9 (ALJ June 1, 2005); *Global Horizons, Inc,* 2005-TLC-7 (ALJ Apr. 28, 2005); *Global Horizons Inc. (Zirkle Fruit Co.),* 2005-TLC-1 (ALJ Oct. 18, 2004); *Global Horizons (Green Acre Farm),* 2005-TLC-4 (ALJ Feb. 25, 2005); *Global Horizons (Zirkle Farms),* 2005-TLC-3 (ALJ Feb. 25, 2005) ; *Global Horizons Inc. (Kauai Coffee Co.),* 2004-TLC-13 (ALJ Sept. 27, 2004); *Global Horizons Inc.,* 2004-TLC-11 (ALJ July 30, 2004); *Global Horizons Manpower, Inc.,* 2003-TLC-9 (ALJ Aug. 4, 2003); *Global Horizons Manpower, Inc,* 2003-TLC-5 (ALJ Apr. 11, 2003). *See* www.oalj.dol.gov/PUBLIC/INA/REFERENCES/CASELISTS/TLC_DECISIONS.HTM.

regulations that govern the terms and conditions of the H-2A workers' employment, the workers' benefits, and the workers' pay with respect to aliens who labored on farms in Hawaii. *See* the Department's February 23, 2005 Determination and Notice of Prospective Denial of Temporary Alien Agricultural Labor Certification for Three Years (Debarment Notice). The Department's Debarment Notice in that consolidated case was sent by certified mail, but addressed to the Respondents at 10474 Santa Monica Boulevard, Suite 403, Los Angeles, California 90025. Their former lawyers, McGuiness, Norris & Williams LLP of Washington, D.C., served the Respondents' request for hearing on March 2, 2005. The Respondents alleged in their hearing request that the Debarment Notice had been misaddressed, and that the Respondents' correct address was nearby at 11111 Santa Monica Boulevard, Suite 1440, Los Angeles, California 90025. The Hawaii debarment matter remains pending at the Office of Administrative Law Judges, after the Respondents withdrew from a settlement that had been approved.[9]

Based on that rather recent experience, there was no reason to believe that mailing another notice by certified mail – correctly addressed this time – would impair the Respondent's ability to request a hearing in a timely fashion. The Determination Notice from the Administrator of the Office of Foreign Labor Certification found, based on his investigation, that in a certification application for jobs in California for the period from August 1, 2003 to April 30, 2004, the Respondents (1) willfully and fraudulently misrepresented that Global Horizons Manpower Inc. had contracts with Taft Vegetable Farm for 200 workers when there was no contract and there were no jobs, and (2) knowingly gave false information, *viz.*, that H-2A workers brought into the country had been terminated for cause (poor performance), when they had been terminated because the Respondents had no work for them. Administrative Record (AR) at 14. The implication was that the Respondents brought those workers into the country without work, shopped them to farmers after they arrived, and when unsuccessful, fired them. AR at 3-4; 8; 13-14; 144. These willfully false statements, which are "substantial violations,"[10] led the Administrator to impose the maximum penalty, barring the Respondents from submitting any other H-2A certification applications for three years.

The Administrator's July 27, 2006 Determination Notice explained how to contest the debarment. Tracking 20 C.F.R. § 655.110(a), it advised the Respondents that they:

> ha[d] the right to request an expedited administrative review or a
> *de novo* hearing of this Determination before a United States
> Department of Labor Administrative Law Judge. If either of the
> [Respondents] makes such a request, the request must be in writing
> and dated, must specify whether an administrative review or *de
> novo* hearing is requested, and must be served on the Department
> of Labor, Employment and Training Administration, Office of
> Foreign Labor Certification, Attention: Bill Carlson, 200
> Constitution Avenue, N.W., Room C-4312, Washington, D.C.

---

[9] The facts in this paragraph are based on the Notice of Intent to Take Official Notice issued on Oct. 4, 2006. No party objected to it.

[10] See the definition of the term at 20 C.F.R. § 655.110(g)(1)(i)(E) (2006).

20210, within seven calendar days of the date of this
Determination Notice.

The Respondents received the certified mail on August 3, 2006, 7 calendar days after it
was mailed. AR at 5. Their request for a *de novo* hearing was sent by overnight delivery to the
Administrator on Friday, August 11, 2006, eight days after the Determination Notice was
delivered to them. They made no request to extend their time to respond, nor did they
acknowledge that their request for hearing was late. The Administrator received their hearing
request the next business day, on Monday August 14, 2006. AR 1; 2.

Through the declaration of Arik Ben-Ezra, the Respondents state that Global's Human
Resources department provided the Determination Notice to its legal department "approximately
a week after it was delivered," at which point the legal department "acted quickly" to send the
hearing request by overnight delivery on Friday, August 11, 2006. The employee who had
signed the receipt for the certified mail, Rob Rutt, says he delivered it on August 3, 2006 (a
Thursday) to an administrator who gave it to an employee who scans mail into the computer
system. Alejandra Rosales, who did the scanning, declares that she scanned it "in the late
afternoon,"[11] and forwarded it on to the Human Resources Department.

The hearing request was late, not because the Respondents failed to mail it on August 3,
2006, but because it languished for eight calendar days before anyone did anything about it.
Scanning obviates the need to shuffle paper around because correspondence becomes digitally
available throughout the office network. The central question is why nobody dealt with the
Determination Notice for over a week, not so much why the paper itself sat somewhere at the
Human Resources department. The declarations offer no explanation.

C.  *The Standard Used to Determine Whether to Accept Belated Requests for Hearing
    or Review at the Department of Labor*

1.   Lateness as a Jurisdictional Defect

The short time available for what the statute's catchline calls "administrative appeals" is
rooted in the statutory text requiring that the Secretary's "[r]egulations shall provide for an
expedited procedure for . . . review." 8 U.S.C.A. § 1188(e)(1) (West 2005). Through rulemaking
the Secretary set the period as "seven calendar days" from "the date of the notice." 20 C.F.R.
§ 655.110(a) (2006).

The only decision within the Department of Labor to consider the effect of a late request
for an expedited review under the H-2A regulations involved the rejection of a facially
unacceptable application, which is governed by a different regulation that also allows seven days
to seek review. *See* 20 C.F.R. § 655.104(c) (2006).[12]  That employer's hopelessly late request

---

[11] Exhibit B to her declaration fixes the time as 3:44 p.m.

[12] The pertinent regulation's text, which governs expedited review of a determination not to accept an H-2A
application for consideration, requires that the notice the Department sends to the employer "state that in order to
obtain such a review or hearing, the employer, *within seven calendar days of the date of the notice*, shall file by
facsimile (fax), telegram, or other means normally assuring next day delivery a written request to the Chief
Administrative Law Judge of the Department of Labor . . . ." (emphasis added) 20 C.F.R. § 655.104(c)(3) (2006).

for review was submitted on November 3, 1998, when the determination served on August 21, 1998 informed him of the option to submit a modified application within five days, or to request a judge's review within seven. The administrative law judge held the overdue hearing request left him without jurisdiction, and dismissed it. *Mike Langley Farms, Inc.*, 1999-TAE-001 (ALJ Nov. 13, 1998).

Most administrative bodies and courts treat regulations that set the time to file a request for a hearing or for review not as grants of jurisdiction, but as limitations periods that are subject to equitable tolling. The jurisdictional ruling was never subject to review within the Department of Labor because a presiding administrative law judge's decision becomes the Secretary's final order. 20 C.F.R. § 655.112(2)(b).[13] The Administrator has not argued that this hearing request must be dismissed for want of jurisdiction, and I regard the jurisdictional holding in *Mike Langley Farms, Inc.* as an error.

Whether the failure to file a timely request for a judge's review is considered a jurisdictional defect, or one that could be excused on a proper showing, the Respondents have failed to show that their late request for hearing should be accepted.

### 2.   Standards Applied in H-1B Matters

The Secretary of Labor adjudicates other matters arising under the Immigration Act's visa programs that provide useful authority by analogy. Among these are complaints that an employer violated a labor condition application the employer filed to obtain an H-1B visa to admit a nonimmigrant alien to work temporarily in a specialty occupation.[14] 8 U.S.C.A. §§1101(a)(15)(H)(i)(b); 1182(n)(2) (West 2005); 20 C.F.R. § 655.810 (2006). Administrative law judges have dismissed late requests for hearing under that program. *Alhames v. South Coast Auto Insurance Marketing Inc.*, 2006-LCA-8 (ALJ April 12, 2006) (dismissing an H-1B worker's untimely hearing request that sought to challenge the Department's calculation of the amount he had been underpaid); *U.S. Dep't of Labor v. Vibez, Inc.*, 2003-LCA-9 (ALJ March 25, 2003) (dismissing an H-1B employer's untimely hearing request that sought to review the Department's determination that it underpaid its H-1B workers almost $81,000). Those decisions did not discuss the circumstances in which a late request might be accepted, however.

---

[13]   The contrary statement in the Order for Further Briefing entered on Oct. 4, 2006 at pg. 1 was an error. The Administrative Review Board has no jurisdiction to review this decision.

[14]   A "specialty occupation" is one that requires entry level employees to have mastered a body of highly specialized theoretical and practical knowledge by earning a baccalaureate or a more advanced degree. 8 U.S.C.A. § 1184(i)(1) (West 2005); 8 C.F.R. § 214.2(h)(4)(iii)(A) (2006); 20 C.F.R. § 655.715 (2006). Architecture, engineering, mathematics, physical sciences, social sciences, medicine and health, education, business specialties, accounting, law, theology, and the arts are examples. 8 C.F.R. § 214.2(h)(4)(ii) (2006). The U.S. Citizenship and Immigration Services component of the Department of Homeland Security identifies and defines the occupations covered by the H-1B category and determines whether the alien qualifies to work in those occupations. 8 C.F.R. § 214.2(h)(4)(iv) (2006). The Secretary of Labor approves and enforces the labor condition applications the employers must make to obtain H-1B visas for those workers. 20 C.F.R. § 655.705; §§ 655.800-855 (2006); 59 Fed. Reg. 65,646 (Dec. 20, 1994).

The Administrative Review Board (Board) reviews administrative law judge decisions and issues final orders in H-1B matters on behalf of the Secretary of Labor.[15] The Board takes an exacting approach when requests for its review are filed late. It dismissed, for example, an appeal from an administrative law judge's decision that an H-1B employer owed six workers about $80,000 when the review petition arrived two days late. *Administrator v. Wings Digital Corp.*, ARB No. 05-090, ALJ No. 2004-LCA-30 (ARB July 22, 2005).

As it decides whether to accept untimely petitions, the Board applies the demanding standards for equitable tolling the federal courts have developed in decisions such as *School Dist. of the City of Allentown v. Marshall*, 657 F.2d 16, 18 (3rd Cir. 1981). The opinion in *Marshall* emphasizes how sparingly Article III courts dispense equitable relief. The Third Circuit held the requirement that an employee complain to the Secretary of Labor within 30 days of alleged employment discrimination, found in the whistleblower protection provision of the Toxic Substances Control Act,[16] is not jurisdictional and might be extended by equitable tolling. It then reversed the Secretary's decision that permitted a teacher to complain about how his public employer treated him, because he failed to present the matter to the Secretary within that statutory 30-day window. The teacher wanted to investigate personally whether asbestos was present in school buildings on the district's campuses, but was allowed free access only to the campus where he taught. A state environmental resources agency had already investigated for asbestos on other campuses. The three acts of discrimination the teacher alleged (refusal to let him roam district buildings freely; questioning him about one of his lesson plans, allegedly as an act of retaliatory harassment; and not allowing him to take a second day of paid leave for personal convenience without giving a reason for his absence) all took place no later than April 5, but he waited to complain to the Department of Labor until May 29. As the court rejected the Secretary's decision to accept and to adjudicate the tardy complaint, it reminded the Secretary that the requirements for equitable tolling are to be "scrupulously observed." *Id.* at 19. To succeed, the teacher had to fit within the principal situations the case law recognized were justifications for tolling, which were that:

(1) the district actively misled him about its rights to seek relief under the Toxic Substances Control Act, or

(2) he had been prevented in some extraordinary way from asserting his rights, or

(3) he mistakenly had presented the precise statutory claim in a timely manner in the wrong forum.

---

[15] The Board's jurisdiction is set in Secretary's Order No. 1-2002, published at 67 Fed. Reg. 64,272 (Oct. 17, 2002).

[16] 15 U.S.C.A. § 2622(b) (West 1998). Short complaint periods are found in several environmental whistleblower protection statutes, including the Safe Drinking Water Act, 42 U.S.C.A. § 300j-9(i) (West 2003); the Water Pollution Control Act, 33 U.S.C.A. § 1367 (West 2001); the Toxic Substances Control Act, 15 U.S.C.A. § 2622 (West 1998); the Solid Waste Disposal Act, 42 U.S.C.A. § 6971 (West 2003); the Clean Air Act, 42 U.S.C.A. § 7622 (West 2003); and the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C.A. § 9610 (West 1995), all of which are implemented at 29 C.F.R. § 24.1(a) and § 24.3(b) (2006).

11-30-2006  15:47   From-US DEPT OF LABOR/OSOL/ETLS   202-693-5732   T-751  P.012/024  F-101

None applied.  Under the *Marshall* court's approach, whether the school district was prejudiced in defending the whistleblower claims was not an independent factor; it would enter the calculus only if a traditional factor supporting equitable relief were present.[17]  The court rejected the Secretary's order that had extended the complaint period because the school district did not prove that doing so would have prejudiced its defense somehow (*e.g.*, by showing that material evidence became unavailable because witnesses could no longer be located, or their memories had faded). *Id* at 20.  With a statutory 30-day limitation period, showings of that kind would be virtually impossible, so the whistleblower complaint period would be subject to routine extensions.  Congress had balanced the employees' right to file retaliation complaints against the limited time their employers "would be exposed to liability." *Id* at 21.  It was not the Secretary's role to strike another balance.  The court "set aside" the Secretary's decision as an action taken "in excess of statutory limitations," applying the judicial review standards of the federal administrative procedure act, 5 U.S.C.A. § 706(2)(C) (West 2005).

Here, in a variation on *Marshall's* theme, Congress insisted on expedited review in 8 U.S.C.A. § 1188(e) (West 2005), and the Secretary set the number of days for the procedural steps in H-2A matters through notice and comment rulemaking.  I believe that the standards for equitable tolling also ought to be used in deciding whether to accept this late hearing request.

The Administrative Review Board has come to regard the three *Marshall* factors as nonexclusive, so equitable tolling is best conceived as having a fourth, catch-all factor that permits the adjudicator to consider any truly exceptional circumstances those three do not encompass. *Wings Digital Corp.*, *supra*, ARB slip op. at 4.  This fourth factor is not applied expansively, however.

The claim by the lawyer for *Wings Digital* that he couldn't file on time because he suffered from a "pounding headache and fever" in the last days of the filing period left the Board unmoved.  The review petition itself was dated two days before the due date, so the Board reasoned that a lawyer well enough to draft it ought to have been able to fax it to Washington, or to contact the Board to request an enlargement of the filing time.  He did neither.  The lawyer's other argument, that he thought he had 30 days from receipt of the administrative law judge's decision to petition for review, was refuted by the decision's "unambiguous statement of the steps [any party] must take to perfect its appeal," which informed the parties that a "petition for review must be received by the [Board] within 30 calendar days of the date of the Decision and Order." *Id* at 3, 5.  The Board held that ignorance of legal rights is no basis to toll a statute of limitations.  Neither the claim of illness nor the claim to have misunderstood the time available to seek review presented an "extraordinary circumstance that excuse[d] Wings Digital's failure to timely file its petition." *Id* at 5.

---

[17] The U.S. Supreme Court used similar language three years later when it held: "[a]lthough absence of prejudice is a factor to be considered in determining whether the doctrine of equitable tolling should apply once a factor that might justify such tolling is identified, it is not an independent basis for invoking the doctrine and sanctioning deviations from established procedures." *Baldwin Co. Welcome Centr. v Brown*, 466 U.S. 147, 152 (1984).

NOV 30 2006  11:32   202 693 5732   98%   P.12

3.   Standards Applied in Whistleblower Protection Matters

  a)   Statutes related to transportation safety

The Board has affirmed an administrative law judge's dismissal of whistleblower protection claims a professional truck driver made under the Surface Transportation Assistance Act[18] when he waited almost 10 months to request a hearing. Each time OSHA informed him that its investigations found no merit to any of the three claims he filed, he was told he had 30 days to request a hearing. *Tavares v. Swift Transportation* Co., ARB No. 01-036, ALJ No. 2001-STA-13 (ARB Oct. 2, 2001). That Act states that "the complainant and the person alleged to have committed the violation may file objections to the findings or preliminary order [of OSHA], . . . and request a hearing on the record . . . . If a hearing is not requested within 30 days, the preliminary order is final and not subject to judicial review." 49 U.S.C.A. §31105(b)(2)(B) (West 2005).[19]   The administrative law judge found that the truck driver offered no reasons that justified equitable tolling of his time to request a hearing, so all claims were dismissed. *Id* at 2.

The Board applies strictly the regulations that set short periods of 10 to 15 days[20] to petition for review when a whistleblower protection complaint involves an air carrier. In a matter filed under the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century,[21] a petition for review sent by overnight delivery that arrived in Washington, D.C. one day late was dismissed, in part because the worker could have faxed it to the Board on the due date. *Herchak v. America West Airlines, Inc.,* ARB No. 03-057, ALJ No. 02-AIR-00012, slip op. at 6 (ARB May 23, 2003), *rev. denied,* 125 Fed. Appx. 102 (9th Cir. 2004) (unpublished).[22] The Board's "internal procedural rule" setting the short filing time was adopted "to expedite the administrative resolution of cases,"[23] something equally true of the expedited final orders administrative law judges issue for the Secretary in H-2A matters. The worker in *Herchak* failed to carry his burden, for the opposing party had not misled him, he had not filed mistakenly in the wrong forum, and no *extraordinary* event precluded a timely filing. *Id* at 6 (emphasis by the Board). A party's own negligence is not an extraordinary circumstance that qualifies for

---

[18] 49 U.S.C.A. §31005 (West 1997).

[19] The Secretary's regulation essentially repeats the Act, saying that: "[i]f no timely objection is filed with respect to either the findings or the preliminary order [made by OSHA after investigating a complaint], such findings or preliminary order, as the case may be, shall become final and not subject to judicial review." 29 C.F.R. §1978.105(b)(2) (2006).

[20] Under an interim regulation the time to file a petition for review in air carrier whistleblower matters had been 15 days from the date of the administrative law judge's decision. 67 Fed. Reg. 15454 (Apr. 2, 2002). The Secretary's final regulation now requires that a petition for review be filed within 10 business days. 29 C.F.R. § 1979.110(a), 68 Fed. Reg. 14100, 14106 (Mar. 21, 2003) (finding that ten days "is sufficient time to petition for review of an ALJ decision").

[21] 49 U.S.C.A § 42121 (West Supp. 2005).

[22] The Ninth Circuit's unpublished decision affirming the Secretary is not precedent. *See* Ninth Cir. Rule 36-3 (b) ("Unpublished dispositions and orders of this Court may not be cited to or used by the courts of this circuit.") and *Hart v. Massanari,* 266 F.3d 1155, 1159 (9th Cir. 2001) (applying the no-citation rule).

[23] *Herchak, supra,* ARB slip op. at 4-5.

equitable tolling. *Miranda v. Castro*, 292 F.3d 1063, 1067 & n. 4 (9th Cir. 2002) (applying the standards for equitable tolling to reject a habeas corpus matter under the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C.A. § 2244(d)(1)(A)).

b) Statutes related to financial markets

The equitable tolling standard has been applied to dismiss an appeal under whistleblower protection provisions of the Sarbanes-Oxley Act.[24] *Minkina v. Affiliated Physician's Group*, ARB No. 05-074, ALJ No. 2005-SOX-19, slip op. at 5 (ARB July 29, 2005) (finding the inability to retain counsel is not an extraordinary event that justified filing a review petition nearly two weeks late; the administrative law judge's decision gave the unrepresented party correct instruction about when a petition for review was due).

c) Statutes related to nuclear and environmental protection

These rigorous equitable tolling standards have been applied under the nuclear and environmental whistleblower protection statutes,[25] where a separate regulation[26] also requires that parties file their petition for review with the Board within 10 days of the date of administrative law judge's decision. *See e.g. Dumaw v. Int'l Brotherhood of Teamsters, Local 690*, ARB No. 02-099, ALJ No. 2001-ERA-6 (ARB Aug. 27, 2002), *aff'd sub nom. Dumaw v. U.S. Dept. of Labor*, No. 02-73020 (9th Cir. 2003) (unpublished) (rejecting a late petition in a proceeding brought under the Energy Reorganization Act); *Hemingway v. Northeast Utilities*, ARB No. 00-074, ALJ Nos. 99-ERA-14 & 15, slip op. at 4-5 (ARB Aug. 31, 2000) (similarly rejecting a petition for review filed in a Energy Reorganization Act matter 15 weeks out of time); and *Duncan v. Sacramento Metro. Air Quality Mgmt. Dist.*, ARB No. 99-01, ALJ No. 97-CAA-121 (ARB Sept. 1, 1999) (accepting a late petition for review in a proceeding under the Clean Air Act that the *pro se* party had filed on time, at the Office of the Chief Administrative Law Judge rather than at the Board); *Gutierrez v. Regents of the University of California*, ARB Case No. 99-116, ALJ Case No. 98-ERA-19; Order Accepting Petition for Review and Establishing Briefing Schedule (ARB Nov. 8, 1999) (accepting a review petition in a proceeding under the Energy Reorganization Act filed by a party represented by counsel on time, but also at the Office of the Chief Administrative Law Judge). Petitions for review of whistleblower protection decisions under the Pipeline Safety Improvement Act[27] must be filed within 10 days as well. 29 C.F.R. § 1981.110(a) (2006).

---

[24] 18 U.S.C.A. § 1514A (West Supp. 2005).

[25] These include whistleblower retaliation claims made under the statutes listed in footnote 16, *supra*, and the Energy Reorganization Act, 42 U.S.C.A § 5851 (West Supp. 2005).

[26] 29 C.F.R. § 24.8(a) (2006), which reads: "[a]ny party desiring to seek review, including judicial review, of a recommended decision of the administrative law judge shall file a petition for review with the Administrative Review Board ("the Board"), which has been delegated the authority to act for the Secretary and issue final decisions under this part. To be effective, such a petition must be received *within ten business days* of the date of the recommended decision of the administrative law judge, and shall be served on all parties and on the Chief Administrative Law Judge. (emphasis supplied).

[27] 49 U.S.C.A. § 60129 (West Supp. 2005).

4.    Standards Applied in Davis-Bacon Act Matters

Equitable tolling has been applied under the Davis-Bacon Act[28] to permit a late review petition when the administrative law judge's decision misinformed the parties about the time available to file it. *In re Tri-Gem Builders*, ARB No. 99-117, ALJ No. 1998-DBA-17, slip op. at 4-5 (ARB Nov. 22, 1999). The substantive portion of the trial decision had required a contractor to pay back wages to employees and debarred it from future government contracting. The Board's procedural ruling was a variation on the typical requirement for equitable tolling, that the opponent affirmatively mislead the party about his or her rights. The decision to accept the appeal exemplifies the catch-all fourth factor that the Board articulated more clearly in its later decision in *Administrator v. Wings Digital Corp.*, ARB No. 05-090, ALJ No. 2004-LCA-30 (ARB July 22, 2005), discussed above.[29] Ultimately the parties in *Tri-Gem Builders* settled, so the Board issued no decision on the merits. The Administrator's Determination Notice delivered to these Respondents was not misleading, however, so the basis for tolling *Tri-Gem Builders* articulated would not apply to them.

The Board did accept a review petition in a Davis-Bacon Act matter that was filed three days late because the lawyer miscalculated the due date when he added the five days for mailing that the procedural rules of the Office of Administrative Law Judges authorize. *Superior Paving & Materials*, ARB No. 99-065, ALJ No. 1998-DBA-11 (ARB Sept. 3, 1999). Those rules for the trial level do not apply before the Board. The Board seemed to have been impressed that the review petition would have been filed two days early if the way the lawyer computed time had been correct. It decided that the litigant had not "slept on his rights," and that the Department has not been prejudiced. The Board never mentioned that the administrative law judge's decision had correctly stated the procedure to obtain review, something it emphasized in its more recent *Minkina, Wings Digital Corp., Herchak, Hemingway,* and *Tavares* decisions discussed above. Evidence that a party was informed correctly about how to protect his or her rights affects whether the failure to take those steps will be forgiven, even when the party acts only a few days late. *See Baldwin County Welcome Cntr. v Brown*, 466 U.S. 147 (1984) (denying equitable tolling for a Title VII claim and explaining that "[o]ne who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence," *id.* at 151).

D.    *Standards Applied Under Federal Procurement-Related Debarment Programs*

The Administrator imposed a prospective refusal to accept temporary alien agricultural labor certifications from the Respondents for three years, something analogous to procurement-related debarments. The federal government has well-established processes to make businesses and individuals ineligible for procurement contracts or nonprocurement programs.[30] Debarment reduces the harm the government suffers by continuing to do business with entities or individuals

---

[28] 40 U.S.C.A. §276a *et seq.* (West 2001).

[29] It might also be viewed as a situation where the judge "led the [claimant] to believe that [he] had done everything required," which justifies tolling. *Baldwin Co. Welcome Cntr. v. Brown*, 466 U.S. 147, 151 (1984).

[30] Nonprocurement programs include federal financial and non-financial assistance and benefits such as grants, cooperative agreements, scholarships, fellowships, contracts of assistance, loans, loan guarantees, subsidies, insurance, payments for specified use, and donation agreements.

who have shown themselves to be unethical or incompetent. *See generally, Caiola v. Carroll,* 851 F.2d 395, 399 (D.C. Cir. 1988). Those suspended or debarred are added to the List of Parties Excluded from Federal Procurement and Nonprocurement Programs (EPLS) that the General Services Administration publishes at http://epls/arnet.gov. The substantive standards for suspension and debarment under procurement and nonprocurement programs differ from those the Administrator relied on in this Determination and Notice. I asked the parties to research how federal agencies have treated untimely responses to suspension, debarment or exclusion notices. Those decisions have not proven to be particularly helpful, unfortunately.

### 1.   EPA

The EPA requires an entity that receives a debarment notice to file a petition challenging the basis for that adverse action within 30 days. 40 C.F.R. § 32.820(a) (2006); 40 C.F.R. § 32.313 (1996).[3] It nevertheless allowed a contractor to participate in a debarment proceeding, when its lawyer filed a late response to the debarment notice. *In the Matter of: Danny's Custodial Care, Inc*, EPA Case No. 93-0261-00, 1997 EPADEBAR 11, at *3-*4 (June 24, 1997). A second notice of proposed debarment was served on the contractor when it appeared that the EPA's original notice likely had omitted an important document that explained the factual basis for the debarment – the agency's Action Request Memorandum. The timely hearing request the contractor filed in response to the second notice mooted the timeliness issue. Ultimately a three-year government-wide debarment was imposed based on the guilty plea the contractor had entered to the crime of improper disposal of hazardous waste. The notice the Administrator sent the Respondents here was not deficient, so the EPA decision adds nothing to the analysis.

The decision in *In the Matter of: Commonwealth Laboratories, Inc*, EPA Case No. 94-0059-01, 1995 EPADEBAR LEXIS 10 (Aug. 24, 1995) involves no late request for a hearing, so it is not relevant. The appellate authority within the EPA entertained the agency's untimely request to reconsider the length of the debarment imposed at the trial level.

---

[31] Entitled Opportunity to contest proposed debarment, it read:

(a) Submission in opposition. Within 30 days after receipt of the notice of proposed debarment, the respondent may submit, in person, in writing, or through a representative, information and argument in opposition to the proposed debarment.

(1) If the respondent desires a hearing, it shall submit a written request to the debarring official within the 30-day period following receipt of the notice of proposed debarment.

(2) [Reserved]

(b) Additional proceedings as to disputed material facts. (1) In actions not based upon a conviction or civil judgment, if the debarring official finds that the respondent's submission in opposition raises a genuine dispute over facts material to the proposed debarment, respondent(s) shall be afforded an opportunity to appear with a representative, submit documentary evidence, present witnesses, and confront any witness the agency presents.

- 14 -
Exhibit B

11-30-2006   15:50     From-US DEPT OF LABOR/OSOL/ETLS                202-693-5732

2.   Department of Agriculture

The Department of Agriculture permitted a respondent additional time to respond to a debarment notice after the 30-day period to do so had expired. *In re: Luis C. Trigo-Vela*, 56 Agric. Dec. 731, 1997 USDA LEXIS 82 (Apr. 17, 1997). Two notices of the proposed debarment sent by certified mail had been returned unclaimed. The reviewing administrative law judge found that the agency should also have sent another notice by regular mail, because the agency knew the respondent "was receiving mail at its last known address." *Id.* at *4. The respondent also had requested an opportunity to respond promptly after it accidentally learned of the debarment proceeding in the course of a bankruptcy proceeding, before the debarment became final. Here the Administrative Record shows, and the Respondents do not deny, that they received the Determination Notice by certified mail. They then failed to exercise due diligence in responding to it.

E.   *The Standards to Vacate A Default under the Federal Rules of Civil Procedure*

Courts may vacate clerk's defaults, and judgments entered on defaults, under the generous standards set in Rules 55(c) and 60(b) (1)-(6). Fed. R. Civ. P. They encompass "good cause," "mistake inadvertence, surprise, or excusable neglect," or "any other reason justifying relief from the operation of the judgment [entered on the default]."

The failure to respond to a Determination Notice bears a superficial resemblance to a failure to respond to a summons and complaint, but is more analogous to a failure to file a complaint within the statute of limitations. Equitable tolling governs the period in which to file a cause of action, to request a hearing or to apply for review, while standards such as "good cause" characteristically apply to deadlines that arise within the course of proceedings that were initiated within the prescribed time. In the alternative, agencies are free to adopt procedural rules and to enforce them strictly, so long as the rules are applied uniformly or exceptions are made only for good reasons the agency articulates. *Green Country Mobilephone v. FCC*, 765 F.2d 235, 237 (D.C.Cir. 1985). Agencies are not required to import their standards from Rules 55 or 60, Fed. R. Civ. P.

It is a mistake to regard equitable tolling as just one more manifestation of the general authority courts and administrative agencies enjoy "to relax or modify [their] procedural rules adopted for the orderly transaction of business before [them] when, in a given case, the ends of justice require it." *American Farm Lines v. Black Ball Freight Services*, 397 U.S. 532 (1970). No filing deadline to initiate a proceeding was involved in that case, where an applicant was seeking authority to operate a temporary shipping route. The unserved shipper was the Department of Defense, which urgently required the services. The Supreme Court approved the ICC's decision to relieve the applicant from a requirement in the Commission's rules that applications state the dates motor carriers with existing routes declined shipping requests. The application from the potential new shipper contained enough detailed information that existing carriers had been able to file lengthy, precise and informed objections with the Commission. The hearing request at issue here is a very different, and uniquely time-sensitive, type of filing.

*F.*     *Agencies May Apply Procedural Deadlines Strictly*

The courts of appeals routinely affirm strict application of filing deadlines agency regulations impose, so long as they are applied consistently. The Respondents do not argue that the Secretary of Labor enforces hearing request deadlines haphazardly.

The D.C. Circuit recently upheld the U.S. Copyright Office's strict interpretation of its regulations that require copyright owners to file claims each July, to obtain a proportionate share of royalties cable and satellite broadcasters pay into a fund that Office administers. *Universal City Studios, LLP v. Peters,* 402 F.3d 1238 (D.C. Cir. 2005). Under the regulations, timely claims are ones that (1) the Office receives during July; (2) the Office receives through the Postal Service on August 1; or (3) the Office receives through the Postal Service on or after August 2, if they bear a July United States Postal Service mark (a) on the envelope or (b) on a certified mail receipt. For claims the Office receives after July 31, the regulation says that dates printed on envelopes by business postage meters do not qualify. 37 C.F.R. § 252.4(c) (2001). Copyright owners who could not produce a stamped postal receipt showing that their claims, which the Copyright Office received after August 1, had been mailed in July were denied any share in that year's royalties. The court of appeals upheld the agency's refusal to accept sworn statements from the employees responsible for mailing the royalty claims as proof they had mailed them on July 30, 2001, or declarations from Postal Service employees to prove that the normal delivery time for a letter sent from southern California to Washington, D.C. is three[32] to five days, as evidence that their late-received claims had been posted in July. The court also upheld the agency's decision that there was no "special or unique circumstance . . . that would warrant a waiver " of the regulation's requirements, which the copyright owners had requested. *Id.* at 1240. The D.C. Circuit held that an "agency's strict construction of a general rule in the face of waiver requests is insufficient evidence of an abuse of discretion" (*id.* at 1242), relying on the judicial review standards found in the Administrative Procedure Act, 5 U.S.C. § 706(2)(A) and *Omnipoint Corp. v. FCC,* 213 F.3d 720, 723 (D.C. Cir. 2000).

The Tenth Circuit upheld the Federal Labor Relations Authority's right to reject objections to an administrative law judge's decision that were not sent to the address the Authority's regulations designated, a requirement that the trial judge's decision repeated. The rejection of the exceptions had the additional effect of depriving the court of appeals of jurisdiction to consider the substantive error the exceptions sought to raise. "[T]he general rule is well established that reviewing courts will not overturn an agency's strict application of its own procedural regulations so long as the rule is applied uniformly or with reasoned distinctions." *Tinker Air Force Base v. FLRA,* 321 F.3d 1242, 1247 (10th Cir. 2002).

The Ninth Circuit found that the National Transportation Safety Board (NTSB) did not act arbitrarily and capriciously when it strictly applied its filing deadlines. *Gilbert v. NTSB,* 80 F.3d 364 (9th Cir. 1996). The NTSB had dismissed an appeal from an administrative law judge's decision upholding the FAA's 90-day suspension of a commercial pilot's license for careless or reckless flying. The pilot's brief to the NTSB was served out of time, due to

---

[32] The Office likewise rejected evidence from an experiment in which 100 letters were posted from southern California to Washington. None arrived in fewer than three days, suggesting that a claim the Office received on August 3 must have been mailed by July 31.

problems his lawyer encountered in printing it. The lawyer neglected to serve a request for an extension of time before the time to serve the pilot's brief expired (which he could have written in longhand and mailed the day the brief was due), or when he filed the late brief at the NTSB. Like these Respondents, the lawyer merely filed the document late. When the FAA challenged the late filing, the pilot argued that his delay had not prejudiced the FAA. The Ninth Circuit found no due process violation in the NTSB's dismissal; the court denied the pilot's petition to review the NTSB's finding that the pilot had failed to show good cause[33] for his failure to serve an extension motion within the time available to file the brief. *Id.* at 368.

### C.   *Equitable Tolling in the Ninth Circuit*

According to the Ninth Circuit, the doctrine of equitable tolling excuses a claimant's failure to comply with time limitations when he or she "had neither actual nor constructive notice of the filing period." *Leorna v. U.S. Dep't of State*, 105 F.3d 548, 551 (9th Cir. 1997). Relief also requires that the claimant act with "all due diligence" to preserve his or her cause of action. *Santa Maria v. Pacific Bell*, 202 F.3d 1170, 1175 (9th Cir. 2000) (rejecting a claim for equitable tolling in a claim for invidious disability discrimination).

The court affirmed a summary judgment against a U.S. Postal Service employee who filed suit claiming that she was terminated in retaliation for complaining to her supervisors about sexual harassment by co-workers. *Johnson v. Henderson*, 314 F.3d 409 (9th Cir. 2002). Her Title VII action was dismissed because she had failed to exhaust administrative remedies within the agency, and failed to show her late filings within the agency qualified for equitable tolling. A federal employee who believes she has been subjected to sexual harassment must contact an EEO counselor with a request for counseling within 45 days of the discriminatory event. 29 C.F.R. § 1614.105(a) (2006). Thereafter she must file a formal complaint with the agency after she receives a "right to file letter" from the agency. 29 C.F.R. § 1614.106 (2006); *see also Brown v. Gen. Services Admin.*, 425 U.S. 820 (1976). In her June 24, 2000 written request for EEO counseling, Ms. Johnson gave August 8, 1999 as the harassment date (far more than 45 days before her request), although elsewhere she said it happened on October 12, 1999 (also more than 45 days before her request). The Postal Service responded to her counseling request with a certified letter mailed to her home, for which it obtained a signed receipt showing delivery on August 4, 2000. The letter told her she had 15 days in which to file a formal EEO complaint with the agency. By that time she also had retained a lawyer. Her EEO complaint was not filed with the Postal Service until September 8, 2000, once again out of time.

Ms. Johnson professed she knew nothing of the 45-day requirement to seek counseling, a claim the magistrate judge rejected because employees were put on notice of the required procedures by posters displayed at the work site, and by a "Learner's Workbook" given to new Postal Service employees that contained a chart setting out the time required to perfect each step in an EEO complaint. *Id.* at 415. The certified mail receipt proved the notice telling her when

---

[33] The decision does not discuss why the agency chose to adopt the "good cause" standard as its test, rather than some other one. But the agency had announced in an earlier adjudication that it would dismiss any appeal when a party failed to file a timely notice of appeal, appellate brief, or request for an extension (*Administration v. Hooper*, 6 N.T.S.B. 559 (1988)), and there was no proof that the agency enforced that policy inconsistently. *Gilbert*, 80 F.3d at 368.

11-30-2006  15:56    From-US DEPT OF    JR/OSOL/ETLS

any formal complaint was due had been delivered to her residence. The instruction in the letter was not crucial, however, for she was represented by a lawyer who should not have needed that prompting. *Id.* at 417. Because she missed multiple deadlines, each of which were dispositive, her claim was dismissed.

These Respondents had written instructions on how to request a hearing in the Determination Notice, and had legal counsel within the organization, who eventually responded on their behalf. They failed to act diligently when they waited for eight days to serve their response to a notice that required action within seven days of the date it had been issued.

### *H.    These Facts Fail to Qualify for Equitable Tolling*

Those who apply for temporary foreign agricultural labor certifications move in an environment of short deadlines for the applicant and the agency. The applicant's business practices must accommodate the 5-day response times available to modify a certification application. The Administrator's Determination Notice was properly addressed to familiar agency customers that employ experienced staff counsel, and instructed the Respondents on how to request a hearing. They recently and successfully had requested a hearing on another debarment matter (the Hawaii debarment proceeding) in a timely fashion. Delivering the Determination Notice by certified mail emphasized that it required prompt attention.

The arrival of the Determination Notice on the last day to request a hearing was an extraordinary circumstance justifying a prompt request to extend the time to serve the Respondents' request for a *de novo* hearing. No evidence had to be gathered or arguments developed; it was enough for the Respondents to write a letter identifying themselves, ask for a hearing, date it, sign it and mail or even fax it. It easily could have accompanied any motion to extend their time to request a hearing. But the Respondents neither requested an extension nor acknowledged that they filed their hearing request late. Even if they thought they had seven days from the date they received the Determination Notice – something inconsistent with the notice itself, and 20 C.F.R. § 655.110(a) – their response was untimely.

The Respondents have failed to offer any satisfactory explanation for their delay in responding to the notice. Their declarations struggle to put the best face on their negligence. After eight days they realized they needed to reply, and sent their response, when it was too late. AR 1. The facts required to qualify for equitable tolling are absent. The Administrator did nothing to mislead them, no extraordinary circumstance kept them from replying to the Determination Notice until eight days after they received it, and they had not filed their hearing request on time in some wrong place. *Marshall, supra,* 657 F.2d at 18; *see also Baldwin County Welcome Ctr. v. Brown,* 446 U.S. 147, 151 (1984) (dismissing the Title VII action a that *pro se* party attempted to initiate by filing her "right to sue" letter in district court. She had been informed several times of the date her complaint had to be filed, but she failed to follow those instructions. The Court held she was not entitled to equitable tolling because she failed to exercise due diligence).

202 693 5732                98%                P.01

*I.    Proportionality*

Dismissal is a harsh result, but no more so than the results in *Baldwin County Welcome Center*[34] and *Johnson v. Henderson*,[35] where the plaintiffs lost their opportunity to present Title VII claims; in *Universal City Studios*,[36] where the copyright holders lost their annual share in the common royalty fund; in *Gilbert v. NTSB*,[37] where the pilot lost his opportunity to appeal his license suspension; in the many cases where litigants lost their right to review by the Administrative Review Board due to their delay in filing petitions for review; or in *Mike Langley Farms, Inc.*[38] where farmer lost the opportunity to use temporary foreign agricultural workers.

## ORDER

The request for hearing is dismissed. This dismissal makes the Department's July 27, 2006 Determination and Notice of Prospective Denial of Temporary Alien Agricultural Labor Certification for Three Years the Secretary of Labor's final order.

William Dorsey
Administrative Law Judge

Notice: This Decision and Order constitutes the final order of the Secretary of Labor. 20 C.F.R. § 655.112(b)(2) (2006).

---

[34] 466 U.S. 147, 151 (1984).

[35] *Johnson v. Henderson*, 314 F.3d 409 (9th Cir. 2002).

[36] *Universal Studios, LLP v. Peters*, 402 F.3d 1238 (D.C. Cir. 2005).

[37] *Gilbert v. NTSB*, 80 F.3d 364 (9th Cir. 1996).

[38] *Mike Langley Farms, Inc.*, 1999-TAE-001 (ALJ Nov. 13, 1998).

11-30-2006   15:57   From-US DEPT OF LABOR/OSOL/ETLS         202-693-5732

# SERVICE SHEET

Case Name: WAGE_and_HOUR_DIVISI_v_GLOBAL_HORIZONS_INC_

Case Number: 2006TLC00013

Document Title: **Decision and Order Dismissing Untimely Request for Hearing**

I hereby certify that a copy of the above-referenced document was sent to the following this 30th day of November, 2006:

**MAE WONG**
**LEGAL ASSISTANT**

Barbara Matthews, Esq.
Norman Garcia, Esq.
Office of the Solicitor/USDOL
71 Stevenson St., Suite 1110
San Francisco, CA 94105
            *(Hard Copy - Regular Mail)*

Global Horizons Manpower, Inc.
Mordechai Orian, President
10474 Santa Monica Blvd., Suite 403
Los Angeles, CA 90025
            *(Hard Copy - Regular Mail)*

Dean A Rocco, Esq.
Mindy Novick, Esq.
Jackson Lewis, LLP
725 S. Figueroa St., Suite 2500
Los Angeles, CA 90017
            *(Hard Copy - Regular Mail)*

Administrator
Office of Foreign Labor Certification
U.S. Department of Labor/ETA
Room C-4312, FPB
200 Constitution Ave., N.W.
Washington, DC 20210

Counsel for Litigation
U. S. Department of Labor, Division of
Employment and Training Legal Services
Room N-2101, FPB
200 Constitution Ave., N. W.
Washington, DC 20210
            *(Hard Copy - Fax)*

Regional Administrator
U. S. Department of Labor/ETA
Suite 830
71 Stevenson Street
P.O. Box 193767
San Francisco, CA 94119-3767
            *(Hard Copy - Regular Mail)*

U. S. Citizenship and Immigration Services
Director, Office of Programs & Regulations
111 Massachusetts Ave., N.W.
Third Floor
Washington, DC 20529
            *(Hard Copy - Express (FedEx))*

**U.S. Department of Labor**

Employment and Training Administration
200 Constitution Avenue, N.W.
Washington, D.C. 20210



JUL 27 2006

**CERTIFIED MAIL**

To:  Global Horizons Manpower, Inc.
      Attn:. Mordechai Orian
      11111 Santa Monica Blvd., Suite 1440
      Los Angeles, CA  90025

CERTIFIED MAIL, RETURN RECEIPT
REQUESTED: Receipt #70001530000385797511

To:  Mordechai Orian
      c/o Global Horizons Manpower, Inc
      11111 Santa Monica Blvd., Suite 1440
      Los Angeles, CA  90025

CERTIFIED MAIL, RETURN RECEIPT
REQUESTED: Receipt #70001530000385797528

Subject:  Department of Labor's Determination and Notice of Prospective Denial of
            Temporary Alien Agricultural Labor Certification for Three Years

Dear Employers:

An investigation of your operations relating to the employment of agricultural workers has
disclosed multiple substantial violations in California for the H-2A labor certification
application that covered the period from August 1, 2003, to April 30, 2004, under the
Immigration and Nationality Act (INA) , as amended by the Immigration Reform and Control
Act (IRCA) (8 U.S.C. §§ 1101 (a)(15)(H)(ii)(a), 1184(c) & 1186), and under the implementing
regulations for these Acts. As a result of this investigation and pursuant to
20 C.F.R. § 655.110(a), the Office of Foreign Labor Certification in the Employment and
Training Administration (ETA) has determined that any H-2A labor certification application
filed by either Global Horizons Manpower, Inc., also known as Global Horizons, Inc. (Global)
or Mordechai Orian (Orian) will be denied for the next three years. I have concluded that
Global and/or Orian made fraudulent and/or willful misrepresentations with respect to their
labor certification application and that these actions constitute a "substantial violation" as
defined in 20 C.F.R. § 655.110(g)(1)(i)(E). More specifically:

- Global and Orian knowingly provided false information regarding agricultural work to be
  performed in California under the labor certification application requested for the
  August 1, 2003, to April 30, 2004, time period. This application sought certification for 200
  workers, when neither the agricultural work nor the contractual relationship with Tait
  Vegetable Farms, which was the basis for the application, ever existed.

- Global and Orian also knowingly provided false information regarding the termination of
  the employment of U.S. workers. They represented to governmental agencies that the
  employment of U.S. workers was terminated for poor performance, when, in fact, the
  workers were terminated for reasons other than for cause.

Exhibit B

This letter and action address only the violations based on fraud and/or misrepresentation. Should violations for this certification be found on other grounds, separate action may be taken at a later date.

This determination is addressed to each person or firm shown above as being an addressee of this Determination and Notice. This action is taken on a joint and several basis, which means that each addressee of this Determination and Notice is subject to a denial action. Any request for review of this Determination will act as a request for review only by the person or firm that submits that request, unless it is expressly stated otherwise in the request for review itself.

Each addressee has the right to request an expedited administrative review or a de novo hearing of this Determination before a United States Department of Labor Administrative Law Judge. If either of the addressees makes such a request, the request must be in writing and dated, must specify whether an administrative review or de novo hearing is requested, and must be served on the U.S. Department of Labor, Employment and Training Administration, Office of Foreign Labor Certification, Attention: Bill Carlson, 200 Constitution Avenue, N.W., Room C-4312, Washington, D.C. 20210, within seven calendar days of the date of this Determination and Notice.

Sincerely,

William L. Carlson, Ph.D.
Administrator
Office of Foreign Labor Certification

2

# Exhibit C



Mark Boster / Los Angeles Times

**HELP WANTED:** As border enforcement has tightened, U.S. farms, such as one in Imperial Valley, shown in 2005, are having a more difficult time finding workers, the administration says.

The administration is quietly relaxing visa regulations because farmworkers are in critically short supply.

By Nicole Gaouette, Los Angeles Times Staff Writer
October 7, 2007

WASHINGTON -- With a nationwide farmworker shortage threatening to leave unharvested fruits and vegetables rotting in fields, the Bush administration has begun quietly rewriting federal regulations to eliminate barriers that restrict how foreign laborers can legally be brought into the country.

The effort, urgently underway at the departments of Homeland Security, State and Labor, is meant to rescue farm owners caught in a vise between a complex process to hire legal guest workers and stepped-up enforcement that has reduced the number of illegal planters, pickers and middle managers crossing the border.

Related Stories
- Giuliani's migrating position is in dispute
- Congress quietly returns to immigration

Exhibit C

"It is important for the farm sector to have access to labor to stay competitive," said White House spokesman Scott Stanzel. "As the southern border has tightened, some producers have a more difficult time finding a workforce, and that is a factor of what is going on today."

The push to speedily rewrite the regulations is also the Bush administration's attempt to step into a breach left when Congress did not pass an immigration overhaul in June that might have helped American farms. Almost three-quarters of farmworkers are thought to be illegal immigrants.

On all sides of the farm industry, the administration's behind-the-scenes initiative to revamp H-2A farmworker visas is fraught with anxiety. Advocates for immigrants fear the changes will come at the expense of worker protections because the administration has received and is reportedly acting on extensive input from farm lobbyists. And farmers in areas such as the San Joaquin Valley, which is experiencing a 20% labor shortfall, worry the administration's changes will not happen soon enough for the 2008 growing season.

"It's like a ticking time bomb that's going to go off," said Luawanna Hallstrom, chief operating officer of Harry Singh & Sons, a third-generation family farm in Oceanside that grows tomatoes. "I'm looking at my fellow farmers and saying, 'Oh my God, what's going on?' "

Officials at the three federal agencies are scrutinizing the regulations to see whether they can adjust the farmworker program, an unwieldy system used by less than 2% of American farms to bring in foreign workers. They are considering a series of changes, including lengthening the time workers can stay, expanding the types of work they can do, simplifying how their applications are processed, and redefining terms such as "temporary."

Administration sources said they were moving aggressively. They declined to discuss details of the proposals.

The agencies are also working on possible changes to a separate visa program, H-2B, which brings in seasonal workers for resorts, clam-shucking operations and horse stables, among other businesses.

The administration has pursued the project discreetly. The issue of immigration has generated friction between President Bush and the conservative wing of the Republican Party, which has strongly opposed many of the initiatives that Bush has pursued.

The changes to the H-2A visa program comprise one of more than two dozen initiatives the administration announced in August. Most of the initiatives dealt with increased enforcement, the most prominent being a measure that would force employers to either fire workers for whom they've received "no match" notification (indicating their W-2 data don't match Social Security Administration records) or face punitive action from the Department of Homeland Security. When Homeland Security Secretary Michael Chertoff announced the enforcement push, he also acknowledged the problems that agriculture reported.

"Even putting aside no-match letters, just our increased work at the border was actually causing a drop in the number of workers coming across," Chertoff said.

Exhibit C

10/8/2007

David James, an assistant secretary of Labor, said Bush asked his department, which has jurisdiction over most H-2A rules, to review the entire program. The agency "is now in the process of identifying ways the program can be improved to provide farmers with an orderly and timely flow of legal workers while protecting the rights of both U.S. workers and foreign temporary workers," James said.

The current program, managed by all three agencies, is famously dysfunctional.

Farmers have to apply for workers about a month in advance, but the agencies often fail to coordinate their response in time for the harvest, which farmers can't always predict. At Hallstrom's farm, where tidy rows of tomato plants run almost to the ocean's edge, half of the 1,000 workers are in the H-2A program. (Nationally, about 60,000 H-2A applications a year are usually filed, compared with more than 3 million farm jobs to be filled. There is no cap on the number of H-2A workers allowed into the U.S.)

She remembers submitting an emergency request for H-2A workers one year and getting the visas 60 days later. She said the laborers spent two weeks pulling rotten fruit off the vines, and the farm lost $2.5 million. "Devastating," Hallstrom said.

Growers also complain about paying for workers' housing, transportation, visas and other fees. Harry Yates, a North Carolina Christmas-tree grower, estimates that his labor costs for H-2A workers are $14 an hour, compared with a competitor whose illegal laborers cost about $7.50 an hour. Like other farmers, Yates said using the H-2A program was an invitation to lawsuits from worker advocates and frequent government investigations.

"I understand why so many growers are afraid to use this program. It is too expensive, too complicated, too slow and too likely to land you in court," Yates said.

Some advocates for workers fiercely dispute this. They say farmers just want to keep wages low.

"The employers want to be free of government oversight, legal-services representation for the guest workers, and other efforts to enforce the modest H-2A worker protections," said Bruce Goldstein, executive director of the advocacy group Farmworker Justice, which is affiliated with the nonprofit National Council of La Raza.

Industry lobbyists have sent the Bush administration a set of detailed suggestions for overhauling the H-2A program through administrative changes, which could take weeks to put in place, and through changes in the regulations, a process that takes months.

Some of the suggestions under consideration include changing the procedures farmers must use to try to hire U.S. citizens first. Currently farmers have to advertise the jobs, then submit applications to Labor and Homeland Security to bring in foreign workers. Growers would prefer to move to a system in which they pledged that they had done all they could to recruit U.S. workers, but no longer had to submit an application to Labor.

Other changes under consideration would simplify the detailed H-2A housing requirements, extend the definition of "temporary" beyond 10 months, and expand the definition of "agricultural" workers to include such industries as meatpacking and poultry processing.

Exhibit C

10/8/2007

nicole.gaouette@latimes.com

Times staff writer Walter F. Roche Jr. contributed to this report.

---

See what's new at AOL.com and Make AOL Your Homepage.

Exhibit C

10/8/2007

# Exhibit D

MAR-9-2007  12:33P FROM:MCPEAK ORCHARDS     9038562833                     TO 102340388         P.2

**U.S. Department Labor**   **Employment and Training Administration**
Chicago Processing Center
844 N. Rush Street
12th Floor
Chicago, IL 60611

March 05, 2007

MC PEAK ORCHARDS                          No. of Job Openings:    16
47 COUNTRY ROAD 4237                            Job Title:    FARMWORKER, FRUIT II
PITTSBURG, TX 75686                     Period of Employment:    04/08/2007 - 07/13/2007
                                               Case Number:    C-07057-04986
                                        Date of Receipt by DOL:    02/26/2007

## RE: MC PEAK ORCHARDS

Dear Sir/Madam,

Your temporary alien agricultural labor certification application, which was received by this office on February 26, 2007, has been reviewed, and it has been determined that it does not meet the requirements of 20 CFR 655.10 1 - 655.103. Consequently, pursuant to the provisions of 20 CFR 655.104, your application is not being accepted for consideration on the grounds that the availability of U.S. workers cannot be tested because the benefits, wage rates, and/or working conditions do not meet the criteria of the regulations.

The specific reasons why your application cannot be accepted for consideration, with citations to the relevant regulatory standards, appear on the enclosed checklist.

As provided by the regulations at 20 CFR 655.104(c), you have the opportunity to request an expedited administrative judicial review or a de novo hearing before a Department of Labor (DOL) Administrative Law Judge on the non-acceptance of the application. To obtain this review or de novo hearing, you must file within seven (7) calendar days of the date of this notice by facsimile (fax), telegram or other means normally assuring next day delivery, a written request for such a review or hearing to the Chief Administrative Law Judge, U.S. Department of Labor, 800 K Street NW, Suite 400, Washington, DC 20001-8002, with a copy to this office. The request for a review or hearing should contain any legal arguments that you believe will rebut the basis for the non-acceptance of the application.

If you do not request an expedited administrative judicial review or a de novo hearing before an Administrative Law Judge within seven (7) calendar days of the date of this notice of non-acceptance, or if you do not choose to resubmit a modified application within five (5) calendar days, no further consideration of the application will be made by any Department of Labor official.

Exhibit D

Sincerely,

Marie C. Gonzalez
Certifying Officer

Enclosure

CC:      Texas Workforce Commission
Alien Labor Certification
Department TWC Building

## CHECKLIST ENCLOSURE FOR UNACCEPTABLE APPLICATIONS

**1. Employment Training Administration Sanctions**           20 CFR 655.110(c)

Deficiency:

After review of this labor certification request submitted and signed by the Carrie Mc Peak, Manager, Mc Peak Orchards, it has been determined that Global Horizons, Inc. is the employer of record rather than Mc Peak Orchards.

Modification Required:

Pursuant to a determination made by Administrative Law Judge, William Dorsey, and affirmed by William Carlson, Office of Foreign Labor Certification, Global Horizons, Inc. has been debarred from the H-2A program for the next three years. For this reason this labor certification cannot be accepted for further consideration.

Exhibit D

# Exhibit E

**U.S. Department Labor**   **Employment and Training Administration**
Chicago Processing Center
844 N. Rush Street
12th Floor
Chicago, IL 60611

June 01, 2007

MORDECHAI ORIAN
GLOBAL HORIZONS, INC, 11111
SANTA MONICA BLVD., SUITE 1440
LOS ANGELES, CA 90025

| | |
|---|---|
| No. of Job Openings: | 10 |
| Job Title: | HORTICULTURAL WORKER II |
| Period of Employment: | 06/01/2007 - 04/01/2008 |
| Case Number: | C-07145-05703 |
| Date of Receipt by DOL: | 05/25/2007 |
| Due Date for Modifications: | 06/06/2007 |

## RE: KARNI FAMILY FARM

Dear Sir/Madam,

Your temporary alien agricultural labor certification application, which was received by this office on May 25, 2007, has been reviewed, and it has been determined that it does not meet the requirements of 20 CFR 655.10 1 - 655.103. Consequently, pursuant to the provisions of 20 CFR 655.104, your application is not being accepted for consideration on the grounds that the availability of U.S. workers cannot be tested because the benefits, wage rates, and/or working conditions do not meet the criteria of the regulations.

Please be advised that Global Horizons, Inc. was a former H-2A employer that was debarred from participating in the H-2A program. Therefore, we are rejecting your application due to the involvement of Global in the process as an agent in your application and its involvement in the hiring and recruitment process.

The specific reasons why your application cannot be accepted for consideration, with citations to the relevant regulatory standards, appear on the enclosed checklist.

As noted in Item 1 of the checklist, you may submit a modified application which eliminates Global Horizons from any involvement in your application. The other modifications that are required for consideration of your application also appear on the checklist. If you choose to file a modified application, it must be received in this office no later than the above captioned date. Include your case number on any correspondence sent to the National Processing Center. Failure to do so may result in a delay in processing your application. Direct inquiries to Shane Barbour at 312-353-5752.

Exhibit E

At the time you file a modified application with this office, you must submit a duplicate modified application to the State Workforce Agency office where you submitted the duplicate of your initial application.

If the modifications in that application are the ones specified in this notice, and the modified application is received by the date requested, it will be accepted for consideration, and a certification determination will be made on your application not later than thirty (30) days prior to your date of need.

If you file a modified application, and it does not address all the modifications listed in this notice, we will not be able to accept it for consideration.

If you file a modified application, and it does address all the modifications listed in this notice, but it is not received in the office by the date indicated, the certification determination will be postponed one day for each day's delay in receiving the modified application.

As provided by the regulations at 20 CFR 655.104(c), you have the opportunity to request an expedited administrative judicial review or a de novo hearing before a Department of Labor (DOL) Administrative Law Judge on the non-acceptance of the application. To obtain this review or de novo hearing, you must file within seven (7) calendar days of the date of this notice by facsimile (fax), telegram or other means normally assuring next day delivery, a written request for such a review or hearing to the Chief Administrative Law Judge, U.S. Department of Labor, 800 K Street NW, Suite 400, Washington, DC 20001-8002, with a copy to this office. The request for a review or hearing should contain any legal arguments that you believe will rebut the basis for the non-acceptance of the application.

If you do not request an expedited administrative judicial review or a de novo hearing before an Administrative Law Judge within seven (7) calendar days of the date of this notice of non-acceptance, or if you do not choose to resubmit a modified application within five (5) calendar days, no further consideration of the application will be made by any Department of Labor official.

Sincerely,

Marie C. Gonzalez
Certifying Officer

Enclosure

CC:   KARNI FAMILY FARM
Michigan Department of Career Development MDCD/DSA
Alien Labor Certification
Cadillac Place

Exhibit E

## CHECKLIST ENCLOSURE FOR UNACCEPTABLE APPLICATIONS

**1. Employment Training Administration Sanctions        20 CFR 655.110(c)**

**Deficiency:**
Global Horizons, Inc., acting as an Agent, has submitted a labor certification request for the Employer Karni Family Farm. As indicated in item 15 of the ETA 790 attachments, Global Horizons, Inc. is involved in the referral process.

**Modification Required:**
Pursuant to a determination made by William Carlson, Office of Foreign Labor Certification, and affirmed by Administrative Law Judge, William Dorsey, Global Horizons, Inc. has been debarred from the H-2A program for the next three years. Your application, at a minimum, authorizes Global to act as your agent for the recruitment and hiring of workers. The involvement of Global Horizons in your application may subvert the intent of Judge Dorsey's Order and your application cannot be accepted at this time.

However, you are free to proceed with a modified application which removes Global Horizons from all involvement in your H-2A application.

Alternatively, if you wish to proceed with this application including the involvement of Global Horizons, we will require additional information so we can properly evaluate Global Horizons role in your application and in order to make a complete assessment of whether the relationship would be in violation of the Order. Please supply the following information.

- Describe the specific duties of Global under this H-2A application as the "agent" for Karni Farms. Will Global Horizons have any role in the supervision, payment or control of the workers? Will any Global employees be on site during the performance of the work contract? If yes, how many and in what capacity?

- In Item 15 of the Attachment to the ETA 790, Global is responsible for referrals and hiring commitments to workers. Please explain the exact process used for the referral process, interviews and hiring by Karni farms and the specific duties of Global in this process.

- Produce all contractual documents reflecting the services that Karni Farms is securing from Global Horizons.

- What are the terms of Karni Farms payments to Global? Is it paying a flat fee or is compensation in any way related to number of workers supplied or work performed. Please provide all relevant documents.

- Is Global supplying H-2A workers to Karni Farms?

    1. Do the workers have employment contracts with Global or Karni Farms? Please produce the documents demonstrating such contracts.
    2. Where are the workers currently located?
    3. How are they getting to your farm? Describe the details involved.
    4. Who is paying for transportation of workers?

5. After the work period is over, what happens to the workers?
6. What obligations does Global have to the workers after placing them on Karni premises?

All of the requested information must be supplied by Karni Farms on Karni Farms letterhead. After review of this information, we will advise you of our decision as to whether Global is improperly participating in the H-2A program and whether Karni Farms application must be rejected.

## 2. Farm Labor Contractor
20 CFR 655.106 (o)(2) & 29 CFR 500.1

**Deficiency:**
If you wish us to proceed with the current application, the referral instructions in item 15 of the ETA 790 attachments identify Global Horizons, Inc. as being directly involved with recruitment of U.S. referrals. Since Global Horizons, Inc is involved with recruitment of U.S. referrals, they are acting as a Farm Labor Contractor. Global Horizons, Inc. has not provided proof that they have obtained the appropriate Farm Labor Contractors license(s) in order to perform these functions.

**Modification Required:**
Global Horizons, Inc. must submit their Farm Labor Contractor (FLC) Certificate and State FLC license (if applicable).

## 3. Rate of Pay
20 CFR 655.102 (b)(9)

**Deficiency:**
The employer has indicated the rate of pay being offered as $9.43 per hour. The current Adverse Effect Wage Rate (AEWR) in Michigan is $9.65 per hour. The wage being offered must be at least the same as the AEWR for the state in which the work will be performed or higher.

**Modification Required:**
The employer must change the rate of pay being offered so it at least equals the current AEWR in Michigan ($9.65 per hour).

## 4. Combination of Duties
20 CFR 655.102

**Deficiency:**
The job description in item 13 of the ETA 750 and item 10 of the ETA 790 indicates that two (2) of the ten (10) requested H-2A workers will be performing more skilled duties involving maintaining all aspects of the hydroponics system. The employer has identified a need for 2 job opportunities.

**Modification Required:**
The employer will need to file a separate application for one of the two opportunities presented within the job description.

## 5. Untimeliness
20 CFR 655.101 (c)

**Deficiency:**
The requested Date of Need must be at least 45 days from the date this application is received at the appropriate National Processing Center. The application was received on 5/25/2007.

Exhibit E

**Modification Required:**
The requested Date of Need must be modified to a date that is no earlier than 7/9/2007.

MORDECHAI ORIAN
GLOBAL HORIZONS, INC, 11111 SANTA
MONICA BLVD., SUITE 1440
LOS ANGELES, CA 90025



JUN 0 4 2007

Exhibit E

- 50 -